UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS EIBENSTEINER, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-2443-X |
| | § | |
| ESSILORLUXOTTICA USA INC. f/k/a | § | |
| ESSILOR OF AMERICA, INC., et al. | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants EssilorLuxottica USA Inc. f/k/a Essilor of America, Inc. (EssilorLuxottica USA) and the EssilorLuxottica ERISA Committee's (ERISA Committee) (collectively "EssilorLuxottica") motion to dismiss. (Doc. 24). Plaintiffs Lucas Eibensteiner, Karon Alonzo Jefferson, Wesley Golden, and Matthew Pitts ("Plaintiffs") bring claims under the Employee Retirement Income Security Act of 1974 (ERISA), arising from EssilorLuxottica's management of its stable value fund investment option. Plaintiffs also allege that EssilorLuxottica engaged in prohibited transactions, and that it failed to monitor fiduciaries. Plaintiffs have not plausibly alleged facts sufficient to state a claim for relief under ERISA, so the Court **GRANTS** the motion and **DISMISSES WITHOUT PREJUDICE** the amended complaint.

### I.    Factual Background

This case arises from a dispute about the management of a contribution retirement plan (the "Plan") sponsored by EssilorLuxottica USA. The Plan offered participants various investment options, including a stable value fund known as the

1

Prudential Guaranteed Income Fund (Prudential Fund).  Stable value funds are designed to preserve principal while providing periodic interest at a set or reset rate, typically determined in advance and adjusted in intervals.

The Prudential Fund was a general account product backed by Prudential Retirement Insurance and Annuity Company (Prudential), meaning participant funds were pooled within the insurer's general account and subject to its financial strength.  Plaintiffs allege that the Prudential Fund provided significantly lower crediting rates than comparable investments which the EssilorLuxottica could have made available to plan participants.  Additionally, Plaintiffs allege that Prudential improperly benefited from plan participants being invested in the Prudential Fund because the assets invested in it were held by Prudential, who kept the difference between the amount earned on the investments and the amount paid to Plan members (the "spread").

Plaintiffs further allege that, because of the low crediting rates Prudential provided to its investors in the Prudential Fund, Prudential reaped a windfall on the spread.  They further allege that EssilorLuxottica failed to adequately monitor the fund, investigate alternatives, or negotiate better terms.  In addition, Plaintiffs claim that Prudential received compensation through recordkeeping fees, revenue sharing, and the spread between what it earned on investments and what it paid to participants.

EssilorLuxottica vigorously disputes the adequacy of these claims and argues, amongst other things, that the Prudential Fund met its core objective of preserving

capital and providing steady returns, and that the comparator funds cited by Plaintiffs are not sufficiently similar.  EssilorLuxottica moves to dismiss Plaintiffs' amended complaint for failure to state a claim.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[1]  To survive a motion to dismiss, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face."[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[4]  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[5]

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint liberally in favor of the plaintiff and accept all facts pleaded in the

---

[1] *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2020) (per curium).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[5] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)).

complaint as true.[6]  That said, courts do not "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement."[7]

### III.    Analysis

First, EssilorLuxottica argues that Plaintiffs fail to adequately plead a breach of the fiduciary duty of prudence.  As far as the Court can determine from the complaint, Plaintiffs' theory of imprudence is: (1) the Prudential Fund's crediting rates were not commensurate with the level of bargaining power held by a large account and risk for a traditional stable value fund; (2) the Prudential Fund chronically underperformed when compared to Plaintiffs' selected comparators; and (3) EssilorLuxottica failed to assess Prudential's financial strength despite known risks like unreliable credit ratings.

Second, EssilorLuxottica argues that Plaintiffs fail to adequately plead a prohibited transaction claim under ERISA.  Plaintiffs' theory of liability is: (1) EssilorLuxottica caused the Plan to engage in transactions with a party in interest, Prudential, by permitting it to provide recordkeeping, trustee, and investment services to the Plan for compensation; (2) each payment of fees to Prudential—including compensation derived from the Prudential Fund and related spread income—constitutes a separate prohibited transaction under 29 U.S.C. § 1106(a)(1)(C);  and (3) Prudential's receipt of allegedly excessive compensation in connection with these services was unlawful.  Plaintiffs further

---

[6] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[7] *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023).

contend that Prudential's generation and retention of spread income from plan investments constitutes an improper use of plan assets. Taken together, Plaintiffs allege that EssilorLuxottica's ongoing payment of fees and allowance of Prudential's compensation structure amount to prohibited transactions with a party in interest in violation of ERISA.

Third, EssilorLuxottica argues that Plaintiffs' claim against it for failure to adequately monitor the ERISA Committee fails as a matter of law. Plaintiffs assert that their duty to monitor claim is plausibly alleged because the underlying breach claim is plausibly alleged.

The Court addresses each in turn.

## A. Fiduciary Duty of Prudence

ERISA imposes a fiduciary duty of prudence that requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]"[8] "[A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones."[9] Thus, a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones.[10]

> The prudence standard normally focuses on the fiduciary's conduct in making investment decisions, and not on the results . . . But when the

---

[8] 29 U.S.C. § 1104(a)(1)(B).

[9] *Hughes v. Nw. Univ.*, 595 U.S. 170, 175 (2022) (cleaned up).

[10] *Id.*

alleged facts do not directly address the process by which the Plan was managed, a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed.[11]

Accordingly, to state a claim for breach of the duty of prudence, plaintiffs may "allege facts sufficient to raise a plausible inference that . . . a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative."[12]

That said, "circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."[13]   Where, as here, plaintiffs do not allege specific facts regarding the fiduciaries decision-making process, courts—such as this one—have required plaintiffs to "provide a sound basis for comparison—a meaningful benchmark."[14]   While the Fifth Circuit has yet to define exactly "meaningful benchmark," this Court is guided by clues from different courts.[15]   For example, courts have reasoned that distinguishing between actively and passively managed accounts is important to determine a meaningful benchmark.[16]   Additionally, benchmark funds with a similar investment strategy can

---

[11] *Main v. Am. Airlines Inc.*, 248 F. Supp. 3d 786, 793 (N.D. Tex. Mar. 31, 2017) (O'Connor, J.) (cleaned up).

[12] *Id.* (cleaned up).

[13] *Hughes*, 595 U.S. at 177.

[14] *Locascio v. Fluor Corp.*, No. 3:22-CV-0154-X, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023) (Starr, J.) (cleaned up).

[15] *Id.*

[16] *Id.* (citing*, e.g., Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1303 (D. Minn. 2021); *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *3 n.9 (N.D. Cal.

aid in the analysis of a meaningful benchmark.[17]

Plaintiffs allege that their comparator investments share key characteristics with the challenged Prudential Fund, such that performance comparisons are appropriate. Specifically, Plaintiffs pled that their comparator stable value funds were (1) fully-benefit responsive, (2) structured so that the insurer cannot terminate the contract prematurely, (3) subject to regular rate review, (4) issued by creditworthy insurers, and (5) that the managers of the comparator investments did not believe circumstances would arise that could limit transactions at contract value and therefore contend that the risk profiles of those investments were comparable.[18] The amended complaint provides some descriptive information regarding the comparator products and includes detailed data comparing crediting rates, including year-by-year performance and alleged underperformance of the Prudential Fund.[19] However, the allegations regarding the comparators' characteristics remain largely high-level and are wanting for substantial factual detail concerning their underlying structure, contractual terms, or specific risk exposures. "[S]imply labeling funds as comparable or a peer is insufficient to establish that those funds are meaningful benchmarks."[20] Although Plaintiffs rely on differences in crediting rates and quantified underperformance, the amended complaint provides limited information

2020).

[17] *See, e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (finding that comparing funds with different investment strategies "does not establish anything about whether [certain funds] were an imprudent choice").

[18] Doc. 20 at 25–27.

[19] *Id.* at 27–31.

[20] *Locascio*, 2023 WL 320000, at *6.

from which to assess whether the comparator investments were similar in material respects.   After all, "imprudence cannot be inferred based solely on allegations identifying the existence of . . . better performing alternative funds."[21]

Plaintiffs also allege that Prudential's financial condition, such as its surplus-to-liabilities ratio and use of offshore reinsurance, presented risks relevant to the prudence of the investment.  Even accepting these allegations as identifying potential risk considerations, the amended complaint does not place them in a broader comparative context.  Plaintiffs do not allege whether these conditions were atypical within the industry, materially different from those of insurers offering the comparator products, or how those factors would have affected a prudent fiduciary's decision-making.  Nor do Plaintiffs connect these alleged risks to any particular deficiency in EssilorLuxottica's selection or monitoring process.

In addition, the amended complaint provides limited information regarding the financial condition, risk profile, or structural features of the insurers associated with the comparator investments.   While Plaintiffs note that Prudential's surplus-to-liabilities ratio was lower than a stated national average, they do not allege comparable metrics for the proposed alternatives or otherwise contextualize that figure within the relevant market.

Taken together, the allegations do not establish that the comparator funds are sufficiently similar to the Prudential Fund to support a meaningful comparison, nor

---

[21] *Matney v. Barrick Gold of N. Am.,* 80 F.4th 1136, 1154 n.15 (10th Cir. 2023).

do they permit a reasonable inference that EssilorLuxottica's process was deficient. The amended complaint does not plausibly allege a breach of the duty of prudence.

### B.    Prohibited Transactions

ERISA prohibits fiduciaries from knowingly engaging in a transaction for the furnishing of goods, services, or facilities with a party in interest.[22]  These provisions target transactions deemed likely to harm the plan through self-dealing.  Liability under section 1106 is subject to statutory exemptions set forth in section 1108.  Those exemptions are affirmative defenses, and therefore a plaintiff need only plausibly allege the elements of a prohibited transaction under section 1106.[23]  In other words, a plaintiff is not required to plead facts negating the applicability of any exemption at the motion to dismiss stage.  However, a plaintiff must plausibly plead the elements of a prohibited transaction claim.[24]

Relevant here is the first element: "causing a plan to engage in [certain] transactions[.]"[25]  Notably, "the collection of a contractually determined fee is not a transaction under 1106(a)."[26]  This framing bears directly on the "party in interest" element.  To state a claim, Plaintiffs must allege that Prudential was a party in interest at the time of the relevant transaction.  The amended complaint does not identify whether Prudential was already providing services to the Plan or its

---

[22] 29 U.S.C. § 1106(a)(1)(C).

[23] *Cunningham v. Cornell Univ.*, 604 U.S. 693, 700 (2025).

[24] *Id.*

[25] *Id.* (cleaned up).

[26] *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins.*, 88 F.4th 602, 612 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 2525 (2024) (cleaned up).

committee at the time the relevant contract was entered.  Absent such allegations, Plaintiffs fail to plausibly plead that EssilorLuxottica caused the Plan to engage in a prohibited transaction with a party in interest.

### C.      Breach of Duty to Monitor

The monitoring claim necessarily fails because the underlying breach of fiduciary duty claims fails.  Although the Fifth Circuit has "never recognized a theory of ERISA fiduciary liability" that holds corporate directors personally liable for failing to monitor fiduciaries appointed by the directors, it has neither accepted nor rejected such a theory.[27]  Instead, the Fifth Circuit has disposed of monitoring claims in circumstances like this one, where the breach claims fail, without reaching the viability of the duty to monitor theory itself.[28]

### IV.    Conclusion

The Court **GRANTS** EssilorLuxottica's motion to dismiss.  The Court **GRANTS** Plaintiffs leave to amend their complaint within twenty-eight days of the issuance of this Order.  The changes to the second amended complaint are limited to those needed to cure the deficiencies identified by this Order.

**IT IS SO ORDERED** this 27th day of April, 2026.

_____
Brantley Starr
UNITED STATES DISTRICT JUDGE

---

[27] *Singh v. RadioShack Corp.,* 882 F.3d 137, 150 (5th Cir. 2018).

[28] *Id.* at 150 n.41 (acknowledging the possibility for a successful monitoring theory open by citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996) and *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011)).