**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| LUCAS EIBENSTEINER, KARON ALONZO JEFFERSON, WESLEY GOLDEN and MATTHEW PITTS, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>ESSILORLUXOTTICA USA INC. f/k/a ESSILOR OF AMERICA, INC., THE ESSILORLUXOTTICA ERISA COMMITTEE and JOHN DOES 1-10,<br><br>Defendants. | Case No. 3:25-cv-02443-X<br><br>Judge Brantley Starr |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
ARGUMENT .......... 2
I. Plaintiffs Fail To State A Plausible Claim With Respect To The GIF. .......... 2
A. The SAC Does Not Remedy The Issues Identified By The Court. .......... 2
B. Plaintiffs Cannot Salvage Their Flawed Comparators .......... 5
C. Plaintiffs' "Process" Allegations Are Predicated On Their Flawed "Underperformance" Allegations. .......... 7
II. Plaintiffs Fail To State A Plausible Claim With Respect To Recordkeeping Fees. .......... 8
A. Plaintiffs Do Not Plausibly Allege The Committee's Process Was Flawed. .......... 8
B. Plaintiffs' Allegations Rely On Fundamentally Flawed Comparisons. .......... 9
CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000) ....................2

*In re CrowdStrike Holdings, Inc. Sec. Litig.*,
816 F. Supp. 3d 683 (W.D. Tex. 2026)....................7

*Edmiston v. Borrego*,
75 F.4th 551 (5th Cir. 2023) ....................1

*Eibensteiner v. EssilorLuxottica USA Inc.*,
2026 WL 1140895 (N.D. Tex. Apr. 27, 2026) .................... *passim*

*Hensley v. Molson Coors Beverage Co. USA LLC Governance Comm.*,
2026 WL 1878633 (E.D. Wis. June 30, 2026)....................5

*Johnston v. Intermountain Healthcare, Inc.*,
2026 WL 1998490 (D. Utah July 10, 2026) ....................5

*Kellam v. Metrocare Servs.*,
2013 WL 12093753 (N.D. Tex. May 31, 2013), *aff'd*, 560 F. App'x 360 (5th Cir. 2014) ....................3, 6, 7, 8

*Kuhn v. Thompson*,
304 F. Supp. 2d 1313 (M.D. Ala. 2004) ....................10

*Laborers Nat. Pension Fund v. N. Tr. Quantitative Advisors, Inc.*,
173 F.3d 313 (5th Cir. 1999) ....................2

*Lacrosse v. Jack Henry & Assocs., Inc.*,
2024 WL 3564575 (W.D. Mo. July 11, 2024)....................2, 4

*McDonald v. Lab. Corp. of Am. Holdings*,
2023 WL 4850693 (M.D.N.C. July 28, 2023)....................6

*Miller v. AutoZone, Inc.*,
2020 WL 6479564 (W.D. Tenn. Sep. 18, 2020)....................2

*Payne v. Hormel Foods Corp.*,
2024 WL 4228613 (D. Minn. Sep. 18, 2024) ....................2

*Perkins v. United Surgical Partners, Int'l.*
2024 WL 1574342 (5th Cir. 2024) ....................8, 9, 10

*Ruilova v. Yale-New Haven Hosp., Inc.*,
2023 WL 2301962 (D. Conn. Mar. 1, 2023) ....................................................................7

*Somers v. Cape Cod Healthcare, Inc.*,
2024 WL 4008527 (D. Mass Aug. 30, 2024) ..................................................................5

*In re Unisys Sav. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996).............................................................................................2

## INTRODUCTION

Plaintiffs' Opposition overstates their allegations, asks the Court to draw sweeping inferences from conclusory allegations, and rehashes arguments the Court already rejected in dismissing their prior complaint. The SAC should be dismissed, this time with prejudice.

***First***, the SAC does not fix any of the issues identified by the Court as to Plaintiffs' GIF comparators. Plaintiffs still fail to allege facts about the "underlying structure, contractual terms, or specific risk exposures" of their comparators. *Eibensteiner v. EssilorLuxottica USA Inc.*, 2026 WL 1140895, at *3 (N.D. Tex. Apr. 27, 2026). Plaintiffs retort by pointing to conclusory allegations—e.g., that the comparator insurers had "better" S/L Ratios than Prudential—without any of the *facts* to support those conclusions. Opp'n at 12 (citing SAC ¶ 98). But, as the Court previously explained, "courts do not 'accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement.'" *Eibensteiner*, 2026 WL 1140895, at *2 (quoting *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023)).

***Second***, the SAC contains no "process allegations." Instead, Plaintiffs ask the Court to infer an imprudent process from the mere fact that a few other funds allegedly performed better than the GIF. That is not enough. *Eibensteiner*, 2026 WL 1140895, at *3.

***Third***, Plaintiffs' allegations about the Plan's recordkeeping fees do not suggest imprudence. The Plan's recordkeeping fees decreased from roughly $54 in 2019 to $42 in 2021 and then to $25 in 2023 when the Plan moved to a new recordkeeper. And Plaintiffs concede the Plan's recordkeeping fees were below market after 2021. Nonetheless, Plaintiffs argue only that the Court should infer imprudence from the fact that a few other plans received different services for modestly lower prices during 2019-2021. The Court should decline that invitation.

***Fourth***, Plaintiffs' allegations about the Plan and their chosen comparators' recordkeeping fees are fundamentally flawed insofar as they ignore "indirect" fees and handwave differences in

the cost and usage of "ancillary" services. Plaintiffs also ignore that the Plan reported receiving *additional* services not reported by their comparators. Plaintiffs' allegations present an apples-to-oranges comparison from which the Court cannot infer imprudence.

## ARGUMENT

### I. Plaintiffs Fail To State A Plausible Claim With Respect To The GIF.

#### A. The SAC Does Not Remedy The Issues Identified By The Court.

The Court previously explained Plaintiffs' allegations were "wanting for substantial factual detail concerning their [alleged comparators'] underlying structure, contractual terms, or specific risk exposures." *Eibensteiner*, 2026 WL 1140895, at *3. The SAC does not address those issues.

***First***, Plaintiffs argue it is enough to simply allege that their comparators are also GIC investments. Opp'n at 12 (arguing the comparators are "sufficiently similar based on the 'structural design' of the general account GICs"). But Plaintiffs have made this argument before—relying on the same case law—and the Court has already rejected it. *See* ECF 29 at 10-11; *Eibensteiner*, 2026 WL 1140895, at *3.[1] The SAC does not assert any new factual allegations and Plaintiffs cite no new case law to warrant the Court deviating from its prior analysis.[2]

---

[1] As Defendants previously explained, Plaintiffs' cited cases are inapposite. In *Payne* and *Miller*, the courts allowed claims to proceed where the plaintiffs identified comparators that were "owned, operated, and managed by the same insurer" or were "an identical product" as the challenged fund. *Payne v. Hormel Foods Corp.*, 2024 WL 4228613, at *7 (D. Minn. Sep. 18, 2024); *Miller v. AutoZone, Inc.*, 2020 WL 6479564, at *5 (W.D. Tenn. Sep. 18, 2020). There are no such allegations here. The opinion in *Lacrosse v. Jack Henry & Assocs., Inc.*, 2024 WL 3564575 (W.D. Mo. July 11, 2024), is an outlier opinion that cannot be squared with the well-accepted meaningful benchmark standard and is not binding on this Court.

[2] Plaintiffs cite several other cases ostensibly in support of this argument that do not address pleading standards at all and, moreover, pre-date the adoption of the "meaningful benchmark" pleading standard by decades. *See* Opp'n at 11-12 (citing *Laborers Nat. Pension Fund v. N. Tr. Quantitative Advisors, Inc.*, 173 F.3d 313, 317-18 (5th Cir. 1999); *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 298-99, 304 n.23 (5th Cir. 2000); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 436-37 (3d Cir. 1996)). They bear no relevance to the issues presently before this Court.

***Second***, Plaintiffs contend "[t]he SAC alleges liquidity and withdrawal terms for the Prudential GIF and Comparator GICs." Opp'n at 13 (citing SAC ¶ 113). There are no such allegations. The SAC only discusses liquidity with respect to Prudential's financial condition. *See* SAC ¶ 94 (Prudential's general account was invested in "higher-risk, less liquid bond[s]"). That says nothing of the liquidity terms of the GIF itself. Nor do Plaintiffs allege any *facts* about the liquidity of their comparators, much less the liquidity of those insurers' general accounts. *See generally* SAC. Similarly, the SAC alleges only that the GIF "allowed Plan participants to withdraw their investments at full value to invest elsewhere," *id.* ¶ 104, but is otherwise silent as to withdrawal terms, including any potential restrictions, for their comparators. *See generally id.*

***Third***, Plaintiffs maintain they added "more details" about the risk exposures of their comparators. Opp'n at 11. But the allegations they cite are the same sort of conclusory statements the Court previously rejected. *Eibensteiner*, 2026 WL 1140895, at *3. For example, Plaintiffs say "that the Comparator Funds had better S/L Ratios." Opp'n at 12 (citing SAC ¶ 98). But Plaintiffs allege no *facts* about the S/L Ratios of any of the comparators—i.e., what those ratios were or how they compared to Prudential's. *Eibensteiner*, 2026 WL 1140895, at *4 (Plaintiffs "do not allege comparable metrics for the proposed alternatives or otherwise contextualize that figure within the relevant market"). Plaintiffs provide no additional metrics or context, and their conclusory allegations are insufficient. *Id.* at *2.[3]

Beyond their conclusory allegations about S/L Ratios, the crux of Plaintiffs' risk-based theory is that it was imprudent to offer the GIF because it was backed by "Prudential's worse

[3] Plaintiffs' Opposition ignores Defendant's argument, thereby conceding it. *See, e.g.*, *Kellam v. Metrocare Servs.*, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."). Defendants also noted Plaintiffs' allegations as to Prudential's financial condition were flawed insofar as they allege facts only as of December 31, 2024, after the GIF's removal.

general account" when alternatives were available from insurers "with better general accounts." Opp'n at 12. But, again, there are *no factual allegations* about the general accounts of *any* of the comparators, much less any factual allegations that plausibly suggest Prudential had a "worse general account" than the comparators. The Court expressly noted this issue in its Order, explaining that Plaintiffs' allegations about Prudential's financial condition were flawed insofar as they "do not allege whether these conditions were atypical within the industry, materially different from those of insurers offering the comparator products, or how those factors would have affected a prudent fiduciary's decision-making." *Eibensteiner*, 2026 WL 1140895, at *4.

Plaintiffs try to handwave these deficiencies as "speculation that differences in Prudential's general account portfolio or contract terms might explain the rate disparities." Opp'n at 12. But Plaintiffs themselves allege that the two "most important" considerations when evaluating a traditional GIC are (1) "the insurer's financial strength" and (2) "the contract terms." SAC ¶ 80. Taking that allegation at face value, then, to evaluate whether the purported comparators are meaningful benchmarks, it is imperative to allege *facts* about their "financial strength" and "contract terms"—the exact factors that Plaintiffs themselves allege inform the analysis. *Id.*[4]

Plaintiffs further argue that they "allege[] these details to the extent knowable from available information." Opp'n at 13. The SAC itself belies this claim. Plaintiffs allege information about Prudential's financial status and general account as of December 31, 2024. SAC ¶¶ 86-99. They could just as easily have alleged comparable financial information for each of their

---

[4] Plaintiffs argue that "withdrawal terms, liquidity, and underlying holdings, 'have no bearing on the fund's ability to offer higher crediting rates.'" Opp'n at 13 (quoting *Lacrosse*, 2024 WL 3564575, at *3). Plaintiffs made this argument before and the Court rejected it. *See* ECF No. 29 at 11. Of course, this argument is contrary to Plaintiffs' *own allegations* about the two "most important" considerations when evaluating a traditional GIC. SAC ¶ 80. Moreover, Plaintiffs misrepresent the holding in *Lacrosse*, which only addressed the availability of an option "for the later purchase of 'annuity for a payment stream during retirement.'" 2024 WL 3564575, at *3.

comparators—in fact, the Court invited them to do just that. *Eibensteiner*, 2026 WL 1140895, at *4. Plaintiffs could have alleged facts about Prudential's and the comparators' financial conditions *before* December 2024, when it had potential relevance to the Plan here. But they did not do so.

Just recently, another case filed by the same plaintiffs' counsel was dismissed for similar reasons. *Johnston v. Intermountain Healthcare, Inc.*, 2026 WL 1998490 (D. Utah July 10, 2026). In *Johnston*, the plaintiffs alleged they could compare the challenged stable value fund to others:

> (1) whose terms are fully benefit-responsive, (2) that do not permit the insurance companies to terminate the agreements before the end of the contract, (3) whose rates are reviewed regularly, and (4) whose contracts are with creditworthy insurance carriers. They also contend that another characteristic to consider is whether the managers of an investment option do not believe that there are any events jeopardizing the ability to transact at the contract value.

*Id*. at *4. Those allegations are nearly identical to Plaintiffs' here. *See* Mot. at 8. But the court rejected them, holding that "even if those similarities do indeed exist and are relevant, the characteristics identified by [d]efendants—investment strategy and risk profile—are necessary to identify meaningful comparators in this context." *Johnston*, 2026 WL 1998490, at *4. Plaintiffs here similarly allege no facts about the "investment strategy and risk profile" of their purported comparators. *See also Hensley v. Molson Coors Beverage Co. USA LLC Governance Comm.*, 2026 WL 1878633, at *3 (E.D. Wis. June 30, 2026) (explaining that "[n]ot all [stable value fund] investments are the same" and dismissing claim based on similar allegations).

**B. Plaintiffs Cannot Salvage Their Flawed Comparators.**

Plaintiffs argue their comparators are meaningful because "[s]everal cases have upheld comparisons to a provider's offering in its own plan." Opp'n at 14. Not so. In *Somers*, the plaintiffs alleged the *same* investment was available in the defendants' plan and in the insurer's own plan and that the rate provided to the insurer's plan was higher than the rate offered in the defendants' plan. *Somers v. Cape Cod Healthcare, Inc.*, 2024 WL 4008527, at *3, 5 (D. Mass Aug. 30, 2024).

In *McDonald*, the plaintiffs alleged that the recordkeeper for the defendants' plan provided similar services to its own retirement plan at a lower price. *McDonald v. Lab. Corp. of Am. Holdings*, 2023 WL 4850693, at *3 (M.D.N.C. July 28, 2023). At best, those cases support an argument that if the *same* GIF were offered in Prudential's own plan at a higher crediting rate, that might state a plausible claim of imprudence. But here, Plaintiffs only allege that a handful of insurers providing *different* stable value funds to *their own* plans at allegedly higher crediting rates supports a plausible inference of imprudence without alleging *any* other facts about those insurers or the stable value funds they provide. Plaintiffs do not even allege that those specific investments were *available* to the broader market, much less that they were available on the same terms.[5]

As to the SVIA Benchmark,[6] Plaintiffs concede "some courts have held that indexes *alone* may not suffice" to state a plausible claim but maintain "that is not the case here." Opp'n at 16. Of course, the SVIA Benchmark is not even an "index"—it is simply an average of the returns of the stable value funds examined in a study by SVIA. But, since Plaintiffs' other comparators are not meaningful benchmarks, all they are left with is this average, which cannot support a plausible inference of imprudence alone. *Id.*; Mot. at 17-18.

Plaintiffs' other arguments concerning the SVIA Benchmark are unpersuasive. First, they argue it is relevant because it "overlaps" the class period by a single quarter, but the SAC says

---

[5] Plaintiffs also argue that the availability of a stable value fund offered by American United Life Insurance Company to an unaffiliated plan in 2021 at a higher crediting rate than its own plan proves their point. Opp'n at 14. But one example proves nothing, particularly since Plaintiffs allege no similar facts for any of their five "representative examples." SAC ¶ 113.

[6] Plaintiffs further argue that the TIAA Traditional Annuity offered in the Ford Plan is a meaningful benchmark because "'[s]table value funds can be managed via guaranteed insurance contracts' as 'a single group annuity contract.'" Opp'n at 14 (quoting SAC ¶ 54). But just because a stable value fund "can be" managed as a group annuity contract does not mean that all group annuity contracts are *meaningful* benchmarks for the GIF. Plaintiffs ignore Defendants' arguments explaining the differences between the TIAA Traditional Annuity and the GIF, Mot. at 12, thereby conceding those differences. *E.g., Kellam*, 2023 WL 12093753, at *3.

nothing of the actual performance of the benchmark during that quarter. SAC ¶ 156. Even if such information is relevant for "color" that does not mean the Court can plausibly infer *imprudence* from pre-class period performance. *See Ruilova v. Yale-New Haven Hosp., Inc.*, 2023 WL 2301962, at *14 (D. Conn. Mar. 1, 2023).

Second, Plaintiffs argue that Defendants "speculat[e] that cash flows distorted the benchmark." Opp'n at 17. But the article that Plaintiffs rely on explicitly states the Benchmark "produced 3% annualized returns" *not* the 4.1% cited in the SAC. Mot. at 16-17. The Court need not accept as true an allegation that is contradicted by Plaintiffs' source. *See In re CrowdStrike Holdings, Inc. Sec. Litig.*, 816 F. Supp. 3d 683, 699 (W.D. Tex. 2026) ("The Court . . . cannot credit a plaintiff's allegations contradicted by documents that the Court may consider."). All Plaintiffs allege with respect to the SVIA Benchmark is that the GIF "underperformed" by less than 1% annually over a period almost entirely predating the putative class period. That is not enough to state a plausible claim for imprudence. Mot. at 16-18.

**C. Plaintiffs' "Process" Allegations Are Predicated On Their Flawed "Underperformance" Allegations.**

Plaintiffs' supposed "process" allegations are conclusory and boil down to nothing more than the contention that since the GIF allegedly underperformed a handful of inapt comparators the Court should infer the Committee's monitoring process was imprudent. Mot. at 14-16. Plaintiffs do not grapple with that argument or any of the case law cited in support thereof, conceding the point. *E.g.*, *Kellam*, 2023 WL 12093753, at *3. Instead, the Opposition doubles down on Plaintiffs' flawed theory, identifying a few supposed "process" allegations, Opp'n at 18-20, which are premised on the unsupported contention that the GIF underperformed. *E.g.*, Opp'n at 18 (citing the "subpar rates" of the GIF), 20 (arguing the Committee was "belated" in replacing the GIF "after more than a decade of underperformance"). Such allegations were not sufficient

before and are not sufficient now. *Eibensteiner*, 2026 WL 1140895, at *3-4 (rejecting materially identical allegations).

**II. Plaintiffs Fail To State A Plausible Claim With Respect To Recordkeeping Fees.**

Plaintiffs argue their amendment to add a new theory of liability—that the Committee acted imprudently by allowing the Plan to pay purportedly excessive recordkeeping fees from 2019-2021—is "permissible" because it is not prejudicial. Opp'n at 20-21. Defendants never made that argument; rather, Defendants argued that Plaintiffs' amendment exceeded the scope of the Court's Order granting leave to amend and was, therefore, procedurally improper. *Id*. Plaintiffs do not address that argument, thereby conceding it. *E.g.*, *Kellam*, 2023 WL 12093753, at *3.

**A. Plaintiffs Do Not Plausibly Allege The Committee's Process Was Flawed.**

Plaintiffs argue the Committee employed an imprudent process insofar as the Committee failed to "timely" reduce the Plan's recordkeeping fees. Opp'n at 24. The allegations in the SAC demonstrate otherwise. Plaintiffs' theory relies heavily on the Fifth Circuit's opinion in *Perkins*.[7] Opp'n at 21-25. But the allegations before the Court are a far cry from those in *Perkins*. In *Perkins*, the plaintiffs alleged the plan's recordkeeping fees *increased* by nearly 40% from roughly $71 per participant in 2016 to $98 per participant in 2018. *Perkins v. United Surgical Partners, Int'l.* 2024 WL 1574342, (5th Cir. 2024) at *4. At the same time, the *Perkins* plan grew by about 40% from slightly under 12,000 participants in 2015 to over 16,500 in 2018. *Id*. The *Perkins* plaintiffs further alleged that "[d]efendants could have taken certain steps to mitigate the [p]lan's recordkeeping costs" but "did not do so." *Id*.

Here, the facts alleged are consistent with what Plaintiffs (and the *Perkins* plaintiffs)

[7] As an unpublished opinion, *Perkins* is "not precedent" and does not have the sort of binding and preclusive effect Plaintiffs attribute to it. Fifth Circuit R. Appellate Pro. 47.5.4.

alleged *should have* happened. The Plan's recordkeeping fee decreased by more than 20% from 2019-2021 ($54 to $42) in conjunction with increases in the Plan's participant count (from roughly 9,200 to 11,600). SAC ¶ 196. And, in 2023, the Committee engaged a *new* recordkeeper (pursuant to a competitive bid process) and negotiated *another* reduction to the Plan's recordkeeping fee of approximately 40% ($42 to $25). *Id.* ¶ 204 n.38.[8] There is no basis for inferring a flawed process.

**B. Plaintiffs' Allegations Rely On Fundamentally Flawed Comparisons.**

Since Plaintiffs' process allegations are implausible, Mot. at 23-25, *supra* at § II.A., the Court need not address whether the comparators are meaningful. *Perkins*, 2024 WL 1574342, at *4. Regardless, Plaintiffs' comparators fail as well.

First, as to indirect fees, Plaintiffs argue that "the Plan and each Comparator Plan reported $0." Opp'n at 22. But the Form 5500 filings explain that the $0 reported "exclude[es] eligible indirect compensation" for which the plan sponsor received required disclosures. *E.g.*, Dkt. 40-3, App. 032. In other words, if the plan sponsor indicates that it received the required disclosures, then it is not required to report those amounts in the Form 5500. Plaintiffs contend they should be excused from engaging in "non-obvious calculations and assumptions" to estimate those indirect fees. Opp'n at 22. But Plaintiffs do not even allege what indirect fees consist of or provide any basis to suggest whether the Plan's indirect fees were higher or lower than the comparators. Excluding a tranche of fees with no explanation is no way to state an apples-to-apples comparison.

Second, as to fees incurred for ancillary services, Plaintiffs argue the Court should disregard the issue because "[p]ursuant to *Perkins*, it is accepted as true that 'fees for those services are negligible' and cannot explain the fee discrepancy." Opp'n at 23. Plaintiffs' argument

[8] Plaintiffs assert these actions were not "timely" based on "[t]he Plan's fee history from 2015 onward." Opp'n at 24. But Plaintiffs provide no context for that argument—the SAC is silent as to what the market rate for recordkeeping fees was during 2015-2018, much less what any individual comparator plan paid during that time period. *See generally* SAC.

dramatically overstates the Fifth Circuit's holding in *Perkins*, which did not hold as a matter of law that fees for ancillary services are *always* negligible or can *never* explain a fee discrepancy. Nor did *Perkins* involve the sort of issues with the plaintiffs' calculation of "bundled" and "ancillary" recordkeeping fees that Defendants identified in their Motion. Mot. at 19-22.

Plaintiffs further contend that "any loan-related charges were themselves excessive, which is not a justification for the overall disparity." Opp'n at 23. But the SAC alleges *no facts* about those "loan-related charges"—not their per-participant cost, usage rates, or how those compare to the purported comparator plans. Nor does the SAC allege any facts about any *other* ancillary services.[9] And Plaintiffs do not adequately address that the Plan received *additional* services (service code 13) that *none* of the alleged comparators reported receiving. Mot. at 22. Plaintiffs' cited allegation says nothing to explain away that discrepancy. *See* SAC ¶ 198.[10]

## CONCLUSION

Defendants respectfully request that the Court dismiss the Second Amended Complaint in its entirety and with prejudice.

---

[9] Plaintiffs argue the Court should disregard the Plan's 2021 404a-5 disclosure, excerpts of which were attached as Exhibit 4 to Defendants' Motion, because it is "not referenced in the pleadings." Opp'n at 8. But Plaintiffs allege they "have drawn reasonable inferences . . . based upon information available to Plaintiffs, ***such as Rule 404a disclosures***." SAC ¶ 186 (emphasis added). Plaintiffs also argue the document "contradicts" Defendants' characterization of the Plan's recordkeeping fees because it states the 0.04% recordkeeping fee "may only apply to some investments." Opp'n at 8-9. But that does not change that the Plan's recordkeeping fee in 2021 was only 0.04%. If anything, the fact that it applies only to some investments suggests that $25 per participant is *conservative* because the 0.04% would not apply to all Plan assets. Regardless, Defendants' reliance on the 404a-5 disclosure was only illustrative and the Court need not consider it to conclude that Plaintiffs' recordkeeping fee claim is implausible.

[10] Plaintiffs also try to explain away this issue by adding facts not pled in the SAC to the background section of their Opposition brief. Opp'n at 7-8. But "[i]t is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004).

Dated: August 18, 2026

Respectfully Submitted,

*/s/ Sean K. McMahan*

Sean K. McMahan (Tex. Bar No. 24130831)
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
Tel: (214) 466-4000
Fax: (214) 466-4001
sean.mcmahan@morganlewis.com

Jeremy P. Blumenfeld (*pro hac vice*)
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jeremy.blumenfeld@morganlewis.com

Keri L. Engelman (*pro hac vice*)
Mathew J. McKenna *(pro hac vice)*
One Federal Street
Boston, MA 02110
Tel: (617) 341-7700
Fax: (617) 341-7701
keri.engelman@morganlewis.com
mathew.mckenna@morganlewis.com

*Counsel for Defendants EssilorLuxottica USA Inc. and the EssilorLuxottica ERISA Committee*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on August 18, 2026, a true and correct copy of the foregoing document was filed via the Court's CM/ECF System, which will provide electronic notice to all counsel of record.

*/s/ Sean K. McMahan*