UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS EIBENSTEINER, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:25-CV-2443-X |
| ESSILORLUXOTTICA USA INC. | § | |
| f/k/a ESSILOR OF AMERICA, INC., | § | |
| et al., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants EssilorLuxottica USA Inc. f/k/a Essilor of America, Inc. and the EssilorLuxottica ERISA Committee's (collectively, the defendants) Motion to Dismiss (Motion). (Doc. 38). The Court **GRANTS** the Motion and **DISMISSES WITH PREJUDICE** Plaintiffs Eibensteiner, Alonzo Jefferson, Golden, and Pitts' (collectively, the plaintiffs) Breach of the Duty of Prudence, Excessive Recordkeeping Fees, and Failure to Monitor claims against the defendants.

### I. Background and Procedural History

The defendants sponsored a Guaranteed Income Fund (the Fund) as part of the EssilorLuxottica Retirement Savings Plan (the Plan), which was backed by Prudential Retirement Insurance and Annuity Company (Prudential). The Court has already described the Plan's details in its first Memorandum Opinion and Order dismissing the plaintiffs' claims without prejudice.[1]

[1] *See* Doc. 34 at 1–3.

Following the Court's Order, the plaintiffs filed a Second Amended Complaint, alleging that the defendants breached their fiduciary duty of prudence and failed to monitor fiduciaries. Specifically, the plaintiffs allege that the defendants breached their duties by failing to sufficiently review the Plan's investment portfolio to ensure that each investment was prudent. They allegedly did so by "selecting and/or maintaining a Guaranteed Investment Contract (GIC) in the Plan with lower crediting rates compared to available, similar investments with higher crediting rates."[2]

Additionally, the plaintiffs allege that the defendants "failed to negotiate a reasonable recordkeeping and administration (RKA) for the Plan."[3] And lastly, the plaintiffs allege that the defendants breached their fiduciary duty to monitor by "failing to monitor and evaluate the performance of" the Plan and by "standing idly by as the Plan suffered significant losses."[4] The defendants filed this Motion to Dismiss for failure to state a claim under Rule 12(b)(6).

## II. Legal Standard

Rule 12(b)(6) authorizes dismissal when a complaint fails to "state a claim upon which relief can be granted."[5] A pleading in federal court must state "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] To

---

[2] *Id.* at 4 (cleaned up).

[3] *Id.* at 5 (cleaned up).

[4] *Id.* at 64.

[5] FED. R. CIV. P. 12(b)(6).

[6] FED. R. CIV. P. 8(a)(2).

state a claim, the plaintiffs do not have to plead detailed facts, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[7] For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must allege sufficient facts "to state a claim to relief that is plausible on its face."[8] And a claim is plausible on its face when supported by enough facts that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint liberally in favor of the plaintiff and accept all facts pleaded in the complaint as true.[10] That said, courts do not "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement."[11]

## III. Analysis

The defendants argue three things in their Motion: (1) the plaintiffs still fail to plausibly allege that the defendants breached their fiduciary duty of prudence;[12] (2) the plaintiffs fail to plausibly allege that the Plan's recordkeeping fees were improper;[13] and (3) the plaintiffs' failure to monitor claim fails.[14] The Court will address each argument in turn.

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[11] *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (cleaned up).

[12] *See* Doc. 39 at 1.

[13] *See id.* at 2–3.

[14] *See id.* at 25.

### A. Breach of Fiduciary Duty of Prudence

The Court previously held that the plaintiffs' "allegations did not establish that the comparator funds were sufficiently similar to the Prudential Fund to support a meaningful comparison, nor did they permit a reasonable inference that the defendants' process was deficient."[15] The question here is whether the plaintiffs alleged sufficient facts in their Second Amended Complaint to demonstrate a breach of the duty of prudence. They did not.

The defendants raise four arguments against the plaintiffs' claim that the defendants breached their fiduciary duty of prudence. First, they argue that the plaintiffs once again fail to sufficiently allege that their comparators are meaningful benchmarks. Second, they argue that the plaintiffs fail to allege that Prudential's financial condition was so dire that the Fund was an imprudent investment. Third, they argue that the plaintiffs still fail to allege sufficient facts about the defendants' fiduciary process by which they selected and monitored investments. Fourth, they argue that the study the plaintiffs rely upon in their amended complaint does not bolster their claim. The Court agrees with all four arguments.

#### 1. Comparators

The defendants first contend that the plaintiffs' purported comparators are still not a "meaningful benchmark," and the Court agrees. As the Court's earlier opinion noted, the Fifth Circuit has yet to define exactly what makes for a

[15] Doc. 34 at 8–9 (cleaned up).

"meaningful benchmark," but other courts have weighed in.[16] Courts should distinguish between actively and passively managed accounts.[17] They should also investigate whether the benchmark has a similar investment strategy[18] and risk profile.[19] And merely labeling funds as "comparable" or "a peer" does not establish that they are meaningful benchmarks.[20]

The Second Amended Complaint contains similar allegations to the First Amended Complaint regarding how it determined comparator funds.[21] It adds that "comparisons to other stable value funds is appropriate because stable funds share similar investment strategies."[22] It then identifies five examples of "identical or substantially identical stable value funds with higher crediting rates" that were not selected,[23] and several more examples of other GICs with "similar characteristics" to the Fund at issue.[24]

---

[16] *See Locascio v. Fluor Corp.*, No. 3:22-CV-0154, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023) (Starr, J.).

[17] *See Perkins v. United Surgical Partners Int'l Inc.*, No. 3:21-CV-0973, 2022 WL 824839, at *6 (N.D. Tex. Mar. 18, 2022) (Starr, J.); *see also Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1303 (D. Minn. 2021); *Davis v. Salesforce.com, Inc.*, No. 20-CV-1753, 2020 WL 5893405, at *3 n.9 (N.D. Cal. Oct. 5, 2020).

[18] *See, e.g.*, *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (finding that comparing funds with different investment strategies "does not establish anything about whether [certain funds] were an imprudent choice").

[19] *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023).

[20] *See Locascio*, 2023 WL 320000, at *6.

[21] The Second Amended Complaint examined funds whose terms are "(1) fully benefit-responsive, (2) whose contracts are with creditworthy carriers, and (3) whose insurance company cannot terminate the agreement prior to the scheduled maturity date," and funds (4) "whose managers do not believe that there are any events that are likely to limit the ability of the plan to transact at the contract value like the [Fund], therein making risk considerations equivalent." Doc. 35 at 28–29.

[22] *Id.* at 29.

[23] *Id.* at 29–30.

[24] *Id.* at 39–47.

The defendants argue, and the Court agrees, that the criteria by which the plaintiffs determine meaningful comparators still "relies on far too high of a level of abstraction."[25] Merely generating broad standards (as the plaintiffs put it, "stable funds" are meaningful comparators because they "share similar investment strategies")[26] and then identifying other funds that fit into those standards does not *prove* they are *meaningful* comparators. Nor does labeling funds "comparators" make them such.[27] The Second Amended Complaint still lacks the "why" the Court requires to find that comparators are meaningful.

A closer look at the purported comparators demonstrates this. Four of the plaintiffs' five top comparators are investment products managed by an affiliate of the investment plan's sponsor, and the fifth is not even a stable value fund.[28] As the defendants point out, affiliates of a plan's sponsor could reasonably give better rates to affiliated entities than to the general public. And the plaintiffs examine other comparators in the Second Amended Complaint interchangeably and inconsistently, depending on the year.[29] Though some of the plaintiffs' comparators offered better rates to unaffiliated rates than their own plans,[30] that does not prove that every plan

---

[25] Doc. 39 at 9.

[26] *See* Doc. 35 at 29.

[27] *See Locascio*, 2023 WL 320000, at *6.

[28] *See* Doc. 35 at 39; Doc. 39 at 11–12.

[29] *See* Doc. 35 at 39–46 (highlighting, for example, the Jackson National Life Insurance Company Defined Contribution Plan in 2019 and 2022, but not 2020, 2021, or 2023).

[30] *See* Doc. 41 at 5; Doc. 35 at 42–43.

does so, or that doing so is the norm. The Court will not give meaningful comparator status to cherry-picked evidence (in this case, purportedly comparative funds).

**2. Imprudent Investment**

The defendants next argue that the plaintiffs fail to explain why the alleged problems with the Fund demonstrate that it was an imprudent investment, and the Court agrees. The defendants allege that the sole change the plaintiffs made in their amended complaint was to explain that other insurance companies offered better "plans" with higher Surplus to Liability ratios.[31] The Court agrees the Second Amended Complaint, like the First Amended Complaint, fails to explain why this new criterion—high Surplus to Liability ratios—matters. As when discussing comparators, the Second Amended Complaint selects as examples carriers in the Plan's same industry (life insurance and annuities) without explaining why *those specific companies* should be compared here.[32] The problem here (as with the First Amended Complaint) is not that companies or plans or carriers can *never* be a valid comparator. Rather, the problem is the plaintiffs' lack of explanation and the inconsistency with which the plaintiffs examine purported comparators.

**3. Fiduciary Process**

The defendants also allege that the plaintiffs fail to explain why the defendants' fiduciary process was deficient, and the Court agrees. The plaintiffs allege that the defendants' process was deficient because of the Fund's "chronic and

[31] *See* Doc. 39 at 13–14.

[32] *See* Doc. 35 at 22.

multifaceted issues" which "spanned nearly a decade."[33] But while the plaintiffs claim that the defendants should have recognized that the Fund's structure warranted higher rates, their argument contradicts itself. They cannot explain why the Committee's decision not to act for a time demonstrates imprudence, but simultaneously, the Committee's decision to act and select another stable fund also demonstrates imprudence. The plaintiffs would put the defendants in a damned-if-you-do-damned-if-you-don't situation: the Committee should have actively monitored and changed faster, but their eventual decision to change demonstrated their impropriety all along.

Additionally, the defendants correctly note that the plaintiffs fail to explain what, exactly, about the Committee's process was imprudent. As the Court has already explained, "a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones. Thus, a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones."[34] A plaintiff could also "allege facts sufficient to raise a plausible inference that . . . a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative."[35] However, because "circumstances facing an ERISA fiduciary will implicate difficult

[33] Doc. 41 at 18.

[34] Doc. 34 at 5.

[35] *Id.* at 6.

tradeoffs, . . . courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."[36]

Unfortunately for the plaintiffs, Fifth Circuit precedent (the only circuit precedent that binds the Court)[37] does not aid them. In *Bussian v. RJR Nabisco, Inc.*, the Fifth Circuit noted that the ERISA "test of prudence . . . is one of conduct, and *not a test of the result of performance of the investment*. The focus of the inquiry is how the fiduciary acted in his selection of the investment, and *not whether his investments succeeded or failed*."[38]

The plaintiffs fail to allege actual malfeasance of any kind. The best they can conjure is accusing the Plan's fiduciaries of being "asleep at the wheel."[39] Yet the plaintiffs' only evidence for their accusation boils down to results: had the Plan's fiduciaries constantly monitored and evaluated the Fund's rates, they would have known that it underperformed, and had they "adopted or implemented a prudent process or policy, they could have easily selected or switched to another stable fund with a proven track record of competitive returns at the very least prior to 2024."[40] The Fifth Circuit has found this exact kind of performance-oriented analysis inappropriate.

[36] *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022).

[37] The plaintiffs rely on several appellate decisions from other circuits. While the Court respects the decisions of other circuits, those do not bind the Court.

[38] 223 F.3d 286, 299 (5th Cir. 2000) (emphasis added). The plaintiffs' reliance on *Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.*, 173 F.3d 313 (5th Cir. 1999) fares no better.

[39] Doc. 35 at 31.

[40] *Id.* at 28.

**4. The Study**

Finally, the defendants argue that the study the plaintiffs rely on does not prove that the Fund underperformed. The Court agrees. The plaintiffs point to the Stable Value Institute of America (SVIA) benchmark, which "examined 135,000 retirement savings plans serving approximately 42 million participants" from January 2010 to December 2019.[41] Yet, as the defendants note, several problems exist with relying on this study.

To start, the plaintiffs' putative class begins on September 9, 2019, meaning that the study is only a valid comparison to the Fund for less than four months. Second, broad benchmarks like the SVIA cannot serve as valid comparators to particular plans with particular strategies like the Fund. While the plaintiffs correctly note that "no circuit court [] has held that a market index can never serve as a meaningful benchmark," a market index *is* an inapt comparator here.[42] The SVIA, unlike the Fund, is "a composite of the *disparate* strategies and styles present in the broad universe of" investments.[43] In other words, the SVIA represents such a broad average of so many different types of investment strategies and goals that the plaintiffs cannot meaningfully compare it to the Fund any more than they can compare the moon to a baseball, though they are both spheres.

[41] *Id.* at 47–48.

[42] Doc 41 at 17 (citing *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 221 (6th Cir. 2024)).

[43] *Hall v. Cap. One Fin. Corp.*, No. 1:22-CV-0857, 2023 WL 2333304, at *7 (E.D. Va. Mar. 1, 2023).

In sum, the plaintiffs' Second Amended Complaint has not fixed the First Amended Complaint's holes. The plaintiffs still lack meaningful comparators and concrete evidence of fiduciary wrongdoing untethered to the Fund's performance. So the Court **DISMISSES WITH PREJUDICE** the plaintiffs' Breach of Fiduciary Duty of Prudence claim.

### B. Improper Recordkeeping Fees

In their First Amended Complaint, the plaintiffs brought an ERISA Prohibited Transactions claim under 29 U.S.C. section 1106(a)–(b).[44] The Court dismissed the claim without prejudice because the First Amended Complaint failed to identify "whether Prudential was already providing services to the Plan or its committee at the time the relevant contract was entered."[45] To succeed, the plaintiffs had to allege "that Prudential was a party in interest at the time of the relevant transaction."[46] In its Order, the Court stated that "changes to the second amended complaint are limited to those needed to cure the deficiencies identified by this Order."[47]

However, the plaintiffs have not amended their complaint to make Prudential's role clear. Instead, they bring a new claim unrelated to their initial ERISA one, alleging that the Plan's recordkeeping and administration fees were excessive and unreasonable. Yet it is irrelevant that new claims might or might not prejudice the

---

[44] *See* Doc. 34 at 9.

[45] *Id.* at 9–10.

[46] *Id.* at 9.

[47] *Id.* at 10.

defendants.[48] The Court will not permit parties to bring new claims in an amended complaint after limiting the scope of that complaint. The Court will *certainly* not do so merely because the new claims rely on some of the same facts as the old claims and thus will not cause undue surprise for the defendants.[49] The Court granted the plaintiffs leave to amend their complaint to bring new facts related to their ERISA claim. The plaintiffs failed to do so. For that reason, the Court **DISMISSES WITH PREJUDICE** the plaintiffs' Excessive Recordkeeping Fees claim.

### C. Failure to Monitor

The plaintiffs' Failure to Monitor claim is derivative of their Breach of Fiduciary Duties claim. Because the latter fails, the former does too.[50]

## IV. Conclusion

For these reasons, the Court **GRANTS** the defendants' Motion to Dismiss. The Court **DISMISSES WITH PREJUDICE** the plaintiffs' claims against the defendants.

**IT IS SO ORDERED** this 23rd day of October, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

[48] *See* Doc. 41 at 20 (misquoting *U.S. ex rel. Matthews v. HealthSouth Corp.*, 332 F.3d 293, 295 (5th Cir. 2003), to argue that new allegations may be considered properly introduced as long as the new allegations do not prejudice the defendants).

[49] *See Villareal v. Navistar, Inc.*, No. 3:20-CV-2980, 2022 WL 14708977, at *3 (N.D. Tex. Mar. 8, 2022) (Starr, J.).

[50] *See* Doc. 34 at 10 (noting that "the Fifth Circuit has disposed of monitoring claims in circumstances like this one, where the breach claims fail, without reaching the viability of the duty to monitor theory itself").